IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-62

Filed 18 July 2023

Wayne County, Nos. 18 CRS 55019, 21 CRS 51204

STATE OF NORTH CAROLINA

v.

MARCUS D. GEORGE

Appeal by Defendant from Judgments entered 3 May 2022 by Judge William W. Bland in Wayne County Superior Court. Heard in the Court of Appeals 23 May 2023.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Nicholas R. Sanders.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Katherine Jane Allen, for Defendant-Appellant; and Marcus D. George, pro se.*

HAMPSON, Judge.

**Factual and Procedural Background**

Marcus D. George (Defendant) appeals from Judgments entered 3 May 2022 upon Defendant's guilty plea to Possession with Intent to Sell and Deliver Heroin, Possession with Intent to Sell and Deliver Cocaine, and two counts of Resisting a Public Officer. The Record before us tends to reflect the following:

On 3 May 2022, pursuant to a plea arrangement, Defendant entered guilty pleas to Possession with Intent to Sell and Deliver Heroin, Possession with Intent to Sell and Deliver Cocaine, and two counts of Resisting a Public Officer.

The State provided a factual basis, stating in relevant part: On 8 December 2018, Deputy Mitchell with the Wayne County Sheriff's Office observed a Jeep driven by Defendant make a left turn without executing a turn signal. Deputy Mitchell did not initiate his blue lights but followed the vehicle until the vehicle parked in front of a residential property. Defendant did not exit the vehicle upon parking. Deputy Mitchell approached the vehicle and asked for permission to search the vehicle; Defendant consented. In the center console, Deputy Mitchell found a clear plastic bag that contained a brown substance that he believed to be heroin based on his training and experience. Deputy Mitchell attempted to detain Defendant, but Defendant ran away. Defendant was ultimately apprehended and arrested. Defendant stipulated the brown substance was heroin.

On 12 April 2021, around 12:51 a.m., officers with the Goldsboro Police Department noticed an individual walking in the middle of the road. One of the officers exited his patrol vehicle and approached the individual identified as Defendant. The officer asked for consent to search Defendant, and he consented. The officer located a large bulge in Defendant's pocket. Defendant began to reach for the bulge, and when the officer did not allow him to reach into his pocket, Defendant "pushed off" and ran. Defendant was apprehended and detained. Several bags

containing a powdered substance were found in his pockets. Defendant stipulated the powdered substance was cocaine.

When asked by the trial court, Defendant offered nothing as to the factual basis. The trial court accepted Defendant's plea and consolidated the charges into two Judgments entered 3 May 2022. The trial court orally sentenced Defendant to two consecutive sentences of 20 to 33 months each.[1]

Acting consistently with the requirements set forth in *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), and *State v. Kinch*, 314 N.C. 99, 331 S.E.2d 665 (1985), Defendant's appellate counsel advised Defendant of his right to file written arguments with this Court and provided Defendant with the documents necessary for him to do so. She then filed an *Anders* brief with this Court stating she was unable to find any meritorious issues for appeal, complied with the requirements of *Anders*, and asked this Court to conduct an independent review of the record to determine if there were any identifiable meritorious issues therein. Defendant filed a *pro se* "Supplemental Brief" on 6 March 2023.

## **Issues**

The dispositive issues on appeal are whether: (I) the trial court erred in failing to institute a competency hearing *sua sponte*; (II) the Record is sufficient to review

---

[1] The written Judgment entered on 3 May 2022 in 18 CRS 55019 imposed a sentence of 20 to 22 months of imprisonment. On 20 June 2022, the Department of Corrections identified the discrepancy between the Written Judgment and oral sentencing. On 28 June 2022, the trial court entered an amended Judgment imposing a sentence of 20 to 33 months of imprisonment.

Defendant's ineffective assistance of counsel (IAC) claims on direct review; and (III) our independent review of the Record reveals any further issues.

## Analysis

I. Lack of Competency Hearing

In his *pro se* brief, Defendant contends the trial court erred in failing to order a mental examination of Defendant. We disagree.

N.C. Gen. Stat. § 15A-1002 provides in relevant part:

> The question of the capacity of the defendant to proceed may be raised at any time on motion by the prosecutor, the defendant, the defense counsel, or the court. The motion shall detail the specific conduct that leads the moving party to question the defendant's capacity to proceed. When the capacity of the defendant to proceed is questioned, the court shall hold a hearing to determine the defendant's capacity to proceed.

N.C. Gen. Stat. § 15A-1002(a), (b)(1) (2021). The trial court has a "constitutional duty to institute, *sua sponte*, a competency hearing *if there is substantial evidence before the court* indicating the accused may be mentally incompetent." *State v. Heptinstall*, 309 N.C. 231, 236, 306 S.E.2d 109, 112 (1983) (citations and quotation marks omitted).

In the case *sub judice*, the capacity of Defendant was not questioned by any party. Further, in accepting Defendant's plea, the trial court extensively inquired as to Defendant's mental capacity and understanding of the proceedings. The trial court engaged in the following colloquy with Defendant:

[THE COURT:] Are you able to hear and understand me?

- 4 -

[DEFENDANT]: Yes, sir.

THE COURT: Do you understand that you have the right to remain silent and that any statement you make may be used against you?

[DEFENDANT]: Yes, sir.

THE COURT: At what grade level can you read and write?

[DEFENDANT]: Twelfth.

THE COURT: Did you graduate high school?

[DEFENDANT]: Yes, sir.

THE COURT: Are you now consuming -- using or consuming alcohol, drugs, narcotics, medicines, including prescribed medications, pills or any other substances?

[DEFENDANT]: Just medicine.

THE COURT: And the medicine I see you said something about yesterday. Whatever medication you take --

[DEFENDANT]: Yes, sir.

THE COURT: Does that help you function better or does it impair your ability to think clearly in any way.

[DEFENDANT]: No, it helps me function better.

THE COURT: It's helpful. All right. So do you believe your mind is clear and do you understand the nature of the charges and do you understand every element of the charge?

[DEFENDANT]: For the most part.

THE COURT: Well, um . . . you probably need to do a little better than that, um . . . are you --

[DEFENDANT]: Well, you said we were going to talk about that, you know.

THE COURT: Well, I am, but let -- let's see . . . well, what are you -- let's just touch on that real quick. You're pleading to possession with intent to sell and deliver heroin. Do you have any question about what that is?

[DEFENDANT]: No, sir (negative indication).

THE COURT: Okay. You're pleading to resisting a public officer. Any question about what that is?

[DEFENDANT]: (Negative indication).

THE COURT: You're pleading to possession with intent to sell and deliver cocaine. Do you have any question about what that mean, that charge means?

[DEFENDANT]: (Negative indication).

THE COURT: And you're charged again with resisting a public officer in that case. And of course we'll go through the factual basis on these, but as you look at that do you understand what those charges are, because that's what you're pleading to in particular, do you understand the nature of the charges and what they're about, possession with intent to sell and deliver controlled substance, and do you understand every element of these charges?

(No audible response from [Defendant])

THE COURT: Is that yes? You feel good about that?

[DEFENDANT]: Yes, sir.

THE COURT: In your review with him, [defense counsel], do you think he does?

[DEFENSE COUNSEL]: Yes, your Honor.

- 6 -

On the Record before us, there is no indication Defendant lacked the capacity to enter his plea. Thus, there was not "substantial evidence before the court indicating the accused may be mentally incompetent." *Id.* Therefore, the trial court did not err in failing to institute a competency hearing *sua sponte*. Consequently, we affirm the trial court's Judgments.

## II.  Ineffective Assistance of Counsel

Defendant also raises various IAC claims. In general, claims of IAC should be considered through motions for appropriate relief and not on direct appeal. *See State v. Dockery*, 78 N.C. App. 190, 192, 336 S.E.2d 719, 721 (1985) ("The accepted practice is to raise claims of ineffective assistance of counsel in post-conviction proceedings, rather than direct appeal."); *State v. Ware*, 125 N.C. App. 695, 697, 482 S.E.2d 14, 16 (1997) (dismissing the defendant's appeal because issues could not be determined from the record on appeal and stating that to "properly advance these arguments defendant must move for appropriate relief pursuant to G.S. 15A-1415"). A motion for appropriate relief is preferable to direct appeal because in order to

> defend against ineffective assistance of counsel allegations, the State must rely on information provided by defendant to trial counsel, as well as defendant's thoughts, concerns, and demeanor. [O]nly when all aspects of the relationship are explored can it be determined whether counsel was reasonably likely to render effective assistance. Thus, superior courts should assess the allegations in light of all the circumstances known to counsel at the time of representation.

*State v. Buckner*, 351 N.C. 401, 412, 527 S.E.2d 307, 314 (2000) (citations and quotation marks omitted). "IAC claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." *State v. Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001) (citations omitted). However, "should the reviewing court determine that IAC claims have been prematurely asserted on direct appeal, it shall dismiss those claims without prejudice to the defendant's right to reassert them during a subsequent MAR proceeding." *Id.* at 167, 557 S.E.2d at 525 (citation omitted).

In order to prevail on an IAC claim, Defendant "must show that counsel's representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068, 80 L. Ed. 2d 674, 693, 698 (1984); *see also State v. Braswell*, 312 N.C. 553, 562-63, 324 S.E.2d 241, 248 (1985) (adopting *Strickland* standard for IAC claims under N.C. Const. art. I, §§ 19, 23). Here, we are unable to decide Defendant's IAC claim based on the "cold record" on appeal. *Fair*, 354 N.C. at 166, 557 S.E.2d at 524 (citation omitted). We thus conclude, "further development of the facts would be required before application of the *Strickland* test[.]" *State v. Allen*, 360 N.C. 297, 316, 626 S.E.2d 271, 286 (2006) (citation omitted). Therefore, we

dismiss any IAC claims, without prejudice, to permit Defendant to pursue a motion for appropriate relief in the trial court.

III.    Independent Review

Our review of the Record on Appeal reveals a discrepancy in the Information in file number 18 CRS 55019 alleging Possession of Heroin with Intent to Sell and Deliver and Resist, Delay, or Obstruct a Public Officer.  Specifically, in the Record before us, on the last page of the Information containing the Prosecutor's signature and Defendant's signature waiving his right to indictment the file number "18CR55019" is manually crossed out and replaced by a handwritten file number which is not entirely legible but includes "18 CRS __8079."[2]  While this may be a scrivener's error, our independent review of the Record at least reveals this potential issue of whether Defendant validly waived his right to indictment by a grand jury specifically in file number 18 CRS 55019.  *See State v. Willis*, 285 N.C. 195, 201, 204 S.E.2d 33, 37 (1974) (the trial court "acquires jurisdiction of the offense by valid information, warrant, or indictment."); *see also* N.C. Const. art. I, §. 22 ("Except in misdemeanor cases initiated in the District Court Division, no person shall be put to answer any criminal charge but by indictment, presentment, or impeachment.  But any person, when represented by counsel, may, under such regulations as the General Assembly shall prescribe, waive indictment in noncapital cases."); N.C. Gen. Stat. §

---

[2] The Information itself contains a number of handwritten revisions including the file number listed on the other pages.  These other pages, however, all reflect the file number 18 CRS 55019.

15A-642(c) (2021) ("Waiver of indictment must be in writing and signed by the defendant and his attorney. The waiver must be attached to or executed upon the bill of information."). Consequently, we remand this matter to the trial court to ensure and clarify there is, in fact, a valid Information, including waiver of indictment, in file number 18 CRS 55019.

## **Conclusion**

Accordingly, for the foregoing reasons, we affirm the trial court's Judgments and dismiss any claims for ineffective assistance of counsel without prejudice to Defendant's right to file a motion for appropriate relief in the trial court. Additionally, this matter is remanded to the trial court to ensure a valid Bill of Information was, in fact, filed in 18 CRS 55019 including Defendant's waiver of indictment.

AFFIRMED IN PART; DISMISSED WITHOUT PREJUDICE IN PART; REMANDED.

Judges FLOOD and RIGGS concur.